FAY WEBB VALLEE, Plaintiff, *v.* RUDY [HUBERT PRIOR] VALLEE, Defendant.*

Supreme Court, New York County, February 13, 1935.

*Benjamin F. Hartstein* [*Thomas I. Sheridan* of counsel], for the plaintiff.

*Bushel & Gottlieb* [*Hyman Bushel* and *Samuel Gottlieb* of counsel], for the defendant.

COTILLO, J. The parties to this action are husband and wife, having intermarried on July 6, 1931. About twenty-one months

* See, also, 153 Misc. 641.

later, on April 5, 1933, they entered into a separation agreement whereby, among other things, the husband became bound to pay the wife $100 a week for the rest of her natural life or until her remarriage. The wife agreed to accept such provision in lieu of all other obligations of the husband, which provisions, it was agreed, should continue even though the marriage was dissolved by a decree of divorce obtained by either party against the other.

This action was instituted by the wife on November 16, 1933, to set aside the separation agreement on the ground that it was procured by fraud and duress and is unjust and inequitable, in that the monetary provision therein made for the support of the wife is grossly inadequate to provide plaintiff with the necessaries to which she is entitled in accordance with defendant's station in life.

Plaintiff has adduced some proof of the circumstances under which the agreement was executed and of defendant's income and earnings since the marriage. Evidence on these points was given by her father, who was present when the agreement was discussed, prepared and executed, and by her accountant who examined defendant's books and records for the purpose of ascertaining his income. Plaintiff herself did not take the stand. She had been present at one or more sessions, but was absent from the courtroom when her counsel rested. There is a statement on the record by such counsel that he had learned " that Mrs. Vallee is confined to her home sick and has had medical attention. I don't know just how she will be today, but this concludes the plaintiff's case and we rest. I think the record should show that she has been here every day until today." Plaintiff's counsel specifically stated, in answer to inquiries by the court, that he did not desire an adjournment because of plaintiff's illness, but that he was resting his case.

The motion to dismiss has been argued at length by both sides. The legal question as to whether plaintiff has made out a *prima facie* case is one of sufficient importance to impel the court to take a short adjournment in order to give it the consideration it deserves. If such a case has not been made out, the interests of justice will be better served by a ruling to that effect at this time rather than by prolonging the trial to take defendant's proofs, which would be superfluous if the motion to dismiss is legally well founded.

The marital status of the parties, the execution of the agreement annexed to the complaint, is admitted by the pleadings. It was conceded on the trial that plaintiff was of age when she entered into the contract here sought to be set aside. From other papers forming part of the record of this action, on file herein, it appears that she is about twenty-six years of age.

It is also established that at defendant's request plaintiff went to the office of her husband's attorney and there signed the separation agreement. Testimony to this effect was given by her father, who, at *defendant's* request, came to New York from California to confer with his daughter. Mr. Webb, the father, was advised by defendant that domestic troubles were impending and came on here, unquestionably, to look after the interests of the daughter. According to Webb's testimony, he accompanied plaintiff to Mr. Bushel's office about eleven o'clock and remained there with plaintiff until the agreement was signed, around six o'clock, or a little later. No claim is made that plaintiff or her father did not understand the terms and conditions of the contract, which was read over paragraph by paragraph by one of the attorneys in Mr. Bushel's office, plaintiff and her father following the reader with copies before them. Plaintiff knew before she went to the attorney's office that it was for the purpose of entering into a separation agreement, but neither she nor her father sought legal advice nor requested independent counsel to represent her.

It is charged in the complaint that in order to induce plaintiff to enter into the contract it was represented to her that defendant had lost " practically his entire personal fortune; " that his financial position was precarious and that he was obliged to borrow large sums from Mr. Bushel. This allegation is denied and the evidence thereon is confined to some statements by Bushel to the effect that he had loaned money to defendant. There is no proof that it was represented that defendant was financially embarrassed or that plaintiff or her father so believed.

The complaint charges, and defendant denies, that unless plaintiff signed the agreement defendant " would give her much less than the $100 per week provided in the agreement." There is testimony that defendant was reluctant to enter into an agreement requiring him to contribute to plaintiff's support and on the day the agreement was signed she was informed that this was his attitude. There was no statement or implication that she would have to take $100 per week under the agreement or accept " much less."

It is further alleged that plaintiff's physical condition was such that she was unable to judge wisely or prudently as to her affairs or to oppose defendant's demands. No attempt whatever was made to substantiate the allegation that her condition was aggravated by defendant's conduct. Plaintiff's physician testified that in 1931 and 1932 " her general physical condition, her nutrition was good, but she was always nervous, emotionally unstable, and had many symptoms of a functional nature." In March, 1933, she was " high strung, nervous, emotionally unstable and a tendency

to being upset and hysterical." There was no proof of her condition on the day she spent six hours in the attorney's office with her father discussing the proposed separation agreement. Had she been unaccompanied by one so vitally interested in her welfare, her nervous condition would have a greater bearing upon this case.

Plaintiff further alleges in her complaint that she signed the separation agreement relying upon the statements and representations made by defendant " as aforesaid," and believing them to be true, and believing that defendant would make no provision for her if she did not sign, and because of her state of health, and that by reason of circumstances existing at and prior to such execution plaintiff acted under duress and coercion exercised by defendant. We have no proof of belief and reliance, either from plaintiff's lips or elsewhere. The " representations " referred to are likewise unsupported by proof. The circumstances existing at the time the instrument was prepared and signed are testified to only by plaintiff's father. He does not disclose anything that establishes duress or coercion. It is true that he states that he was interested only in getting his daughter back to his home in California and that he was not interested in the proof of his daughter's infidelity or wifely indiscretion, which Bushel claimed to have and offered to submit to him. Thus, indirectly, was there evidence that the husband had made charges against the wife. These charges were made through the attorney, not with the wife alone, but in the presence of her father, a police officer of many years' standing, chief of his force. There is no claim that he did not understand or was unable to cope with the situation.

The claim is made in the complaint that defendant's representations of his financial status were false and designed to deceive plaintiff; that to conceal his true financial condition he organized various corporations to which he transferred a large part of his assets; secreted his property in safe deposit boxes rented under other names; established trusts for his own benefit, and adopted other subterfuges and devices to mislead plaintiff and conceal from her his true financial condition. It was shown that defendant conducted some of his activities through a corporation known as Rudy Vallee Orchestra Units Corporation. The use of the name " Rudy Vallee " certainly does not indicate an attempt to conceal defendant's identity or his interest in the corporation. No attempt was made to establish any of the other allegations just referred to.

Plaintiff alleges that defendant's income in 1933 was in excess of $350,000, and that he is worth upwards of $3,000,000. The proof disclosed an average income of about $125,000 a year for the years 1932, 1933 and 1934. Proof of his net worth was held immaterial

by the court, it being conceded that defendant was a man of substantial means.

Defendant admits the allegations of the complaint in so far as they charge that under the agreement plaintiff released her interest in his real estate in California as well as in other properties in Maine. He denies, however, that the agreement limits or restricts plaintiff's earning capacity or engaging in any stage or radio appearance. The agreement provides that she will not engage in these or similar activities while in receipt of the moneys provided for therein, or in the event she should be so employed, payments by the defendant shall be suspended to an amount equal to her earnings from these sources.

Defendant likewise denies that plaintiff executed the agreement unadvisedly and imprudently, and that the provisions thereof are unjust, unfair, inequitable or unconscionable, and the allowance grossly inadequate to provide plaintiff with the necessaries to which she is entitled, in accordance with her husband's station in life, as alleged in the complaint. As above stated, plaintiff did not herself take the stand to support by her own testimony a single allegation of the complaint. We have no proof of her necessities, her personal income or property, if any, or her lack of knowledge of her husband's affairs or reliance upon statements alleged to have been made, but not, however, substantiated by proof. Had satisfactory proof of the truth of the material allegations been forthcoming even from sources other than plaintiff's own testimony, her failure to take the witness stand in support of the charges made by her might not be regarded as vital to her success. She was in court, daily, except for the session at which her counsel rested her case. No proof was offered of her inability to attend and testify. It is the rule that when a party has under his control a witness who is in a position to testify concerning a material fact and fails to call that witness, the trier of the facts may infer that the testimony of the witness if called would be unfavorable. Where a party having knowledge of facts material to her cause refrains, without adequate excuse, from offering her testimony in support thereof, it is difficult to avoid drawing the inference. Mr. Justice KAPPER recently said in *Isquith* v. *Isquith* (229 App. Div. 555, at p. 559): " The matters in dispute were peculiarly within the knowledge of the defendant husband, and as was said in *Dowling* v. *Hastings* (211 N. Y. 199, 202), ' Why did he not go on the witness stand and explain the transaction? ' The principle announced by Judge ANDREWS in *Wylde* v. *Northern R. R. Co. of N. J.* (53 N. Y. 156) was reiterated in the case cited — that where one party to an action, knowing the truth of a matter in controversy and having the evidence in his

possession, omits to speak, every inference warranted by the evidence will be indulged in against him, the court adding: ' That rule applies with full force in this case.' "

I have analyzed the complaint and proof in support of the allegations somewhat more at length than would ordinarily be necessary upon a motion of this character. It is clear that if the agreement here under attack was an ordinary business contract the lack of proof of fraud, duress, concealment or misrepresentation would require the dismissal of the complaint. Being, however, a contract between husband and wife, relating to the husband's obligation to support his wife, it is subject to other rules than pertain in ordinary rescission actions.

The outstanding elements of proof are that the wife executed the instrument without the benefit of independent legal advice at the office of her husband's attorney and that she accepted $100 per week despite the fact that her husband's earnings and income were between $120,000 and $150,000 per annum. I find no evidence of duress or coercion, or that fraud or misrepresentation was practiced upon her. Do the other two elements, viz., lack of legal advice and disparity between the husband's income and the wife's allowance, suffice to support a judgment of rescission in the event no further proof is offered?

First, as to lack of legal advice: The plaintiff's proofs establish that several days before April 5, 1933, and on or about April first, defendant requested plaintiff's father to come to New York, which he did, going immediately to his daughter's apartment. He then accompanied her to Mr. Bushel's law office. The wife had been requested several days earlier to go to that office, according to her verified complaint. Mr. Webb states that they arrived at Bushel's office at eleven o'clock and remained there until after six.

Webb has been a policeman for nineteen years and chief of his force for ten years or more. He was acquainted with Bushel and was cognizant of the nature of the business at hand, as was his daughter. He does not indicate by his testimony that either he or she was unable to understand the agreement and its legal effect, and there is no other evidence on the subject. Mention was made of moneys loaned to defendant by Bushel, but Webb did not testify to any concealment of facts or representations of defendant's finances. Mention is also made by Webb of the fact that Bushel had evidence of plaintiff's indiscretions, as hereinbefore mentioned. Nothing is shown to indicate that Webb and plaintiff were not given the liberty to consult counsel, if they desired, and to postpone signing if they desired such advice. Apparently they made no

such request, nor were they told the agreement had to be signed that day, so far as the proof shows.

Webb states that he was concerned only in taking his daughter back to California at once because of her health.

I find no proof of force, fraud or coercion, and am satisfied that plaintiff was not prevented from obtaining legal advice if she so desired. The presence of her father removed the element of lack of protection, such as was present in some of the cases cited in the briefs of counsel. While Webb is not learned in the law, he was a man of sufficient experience to realize that fact and of sufficient force and character to demand the right to consult counsel if he deemed it necessary. No attorney would have the interests of plaintiff more at heart than did her own father.

This brings us to the final element urged in opposition to the motion to dismiss. May it be said, as matter of law, that the disparity between defendant's income and the amount he has agreed to pay plaintiff requires the court to set the agreement aside? Plaintiff urges that the courts have repeatedly set such contracts aside because of inadequacy of the payments therein provided for. It should be borne in mind that disparity between the husband's income and the wife's allowance is not proof of *inadequacy*. Plaintiff offered no proof of her manner of living while the parties were cohabiting as husband and wife. She has given no evidence of her personal income, if any, or of her private fortunes. No attempt. was made to show the necessities of her situation. One hundred dollars per week sounds small compared with $125,000 a year. It is not on its face inadequate to support a young woman fairly comfortably unless she has been accustomed to luxury and great wealth. Defendant concededly had a very substantial income during the twenty-one months he lived with plaintiff and is still able to command lucrative contracts. Plaintiff has not informed us of the scale and style of living to which defendant accustomed her. There is some mention in the proof of a contract made while the parties were living together, long before any of the events here complained of took place, under which plaintiff accepted $150 per week for her maintenance.

An examination of the many cases cited by plaintiff's counsel discloses that they are readily distinguishable from the facts here presented. Those in which the consideration was paid to the wife in a lump sum may be discarded without further consideration. Such a payment is no substitute for continued support for the balance of the wife's lifetime. The Domestic Relations Law (§ 51) prohibits a husband and wife from contracting " to relieve the husband from his liability to support his wife." It does not forbid

husband and wife from agreeing upon the amount necessary for such support, and it has been held that the wife may properly judge the amount thus required. (*Winter* v. *Winter*, 191 N. Y. 462.) Judge VANN said in the *Winter Case* (p. 474): "She does not relieve him of his obligation when she accepts his promise to perform it and he does not forsake his duty when he agrees to discharge it to her satisfaction. She is the best judge of what she needs for her support and the amount may be fixed and settled by an agreement made after actual separation without violating any principle of law or any statute now in existence."

The defendant here has bound himself to pay his wife $5,200 a year in weekly installments as long as she lives. The agreement is not to be affected by divorce or separation actions, even though brought successfully by the husband for the wife's fault. It is to be terminated only by the marriage of the wife to some other man or her death. Under decisions of the courts of this State it is not terminated by the death of the husband, nor does it fluctuate with the husband's income and earnings. These are elements of value in the agreement that tend to reduce the apparent disparity between the husband's present income and the amount he has agreed to pay his wife.

The extravagant claims made by the wife and her failure to take the stand or otherwise offer proof in support thereof raise doubts as to the *bona fides* of this action. This alone would not warrant a dismissal if legal proof to make out a *prima facie* case on the material issues had been presented. The absence of such proof may, however, take on new light by reason thereof.

The evidence bearing upon the misrepresentations of defendant's financial status, the lack of a legal adviser, and upon the claim of coercion and ill health, is legally insufficient to warrant a finding that the agreement should be set aside. Nor do I believe that either plaintiff or her father was unaware of what they were doing or of the legal effect of the agreement. I am convinced that plaintiff well knew that she was forever relinquishing her entire interest and claim in and to the defendant's properties and income and that she advisedly accepted, for reasons then satisfactory to herself, a weekly income of $100 for life in lieu thereof. After seven months' reflection she has decided, or has been advised, that she can force defendant to pay more. If she is unable to support herself comfortably on the amount she accepted, or has found it insufficient for her needs, she utterly failed to prove those conditions.

The court has examined the various cases cited by plaintiff, such as *Hungerford* v. *Hungerford* (161 N. Y. 550); *Tirrell* v. *Tirrell* (232 id. 224) and *Galusha* v. *Galusha* (116 id. 635), in the Court

of Appeals, and *Matter of Silver* (137 Misc. 59), *Uhler* v. *Uhler* (128 N. Y. Supp. 963) and *Glusker* v. *Glusker* (108 Misc. 287), upon which great reliance is placed. In some of these cases a lump sum had been paid the wife and had been exhausted, leaving the wife destitute. In the cases where installment payments were provided for there was direct proof of fraud and duress, which is absent here. In no case has the court set aside an agreement solely on the ground that there was a disparity between the husband's income and the provisions made for the wife.

Plaintiff admits she executed an agreement to accept $100 a week for life. Defendant concedes his income is about $125,000 a year. The plaintiff wife asks the court to hold that upon those two facts she has shown that she has been overreached and defrauded. In the final analysis, this is the one issue raised by the motion to dismiss. The wife has adduced no proof of inadequacy, or of inability to support herself. She has merely shown that her husband has a greater income than she has. More is required to avoid a contract deliberately entered into with full knowledge.

The motion to dismiss the complaint is granted.