JESSIE L. GRAHAM, Appellant-Respondent, *v.* RICHARD F. HUNTER, Respondent-Appellant.

First Department, July 2, 1943.

*Peter J. Baxter* of counsel (*John N. Regan* with him on the brief; *Regan & Barrett,* attorneys), for appellant-respondent.

*John Gerdes* of counsel (*Mary-Chase Clark* with him on the brief; *Gerdes & Montgomery,* attorneys), for respondent-appellant.

COHN, J. Plaintiff and defendant were married in New York in 1911. Two children were born of the marriage, one on December 14, 1912, and the other on April 4, 1914.

After having lived together for more than a score of years the parties separated. About a month after they had parted and on June 27, 1932, they entered into a temporary separation agreement to be effective until December 31, 1932. Therein it was provided that for the remainder of that year defendant would pay $1,000 per month for the support and maintenance of plaintiff and the children; that defendant was to have the right of visitation of the children and of visits by them; that the parties would use their best efforts to establish a trust fund of $200,000 one half of which was to be contributed by this plaintiff from the planned sale of " the residence property " standing in her name for at least $100,000, and the balance to be contributed by defendant in cash and securities; that this trust was intended to be " in lieu of direct payments or contributions " by defendant, and to relieve him of his " obligation to make direct payments under this agreement."

On December 7, 1932, the parties entered into the permanent

agreement which was to become effective after the termination of the first agreement on December 31, 1932. By the " Second " paragraph of the later instrument defendant agreed to pay to plaintiff for her support and maintenance, the support and maintenance of the children and their education and care from year to year and " until the establishment of the certain Trust Fund hereinafter referred to and described " of $200,000, one half of his annual earnings from the Hunter Illuminated Car Sign Company and from the dividends on his stock in that company, not, however, to exceed $12,000 a year, or, at the election of the wife, one third of such annual earnings.

Plaintiff and defendant further agreed that the trust fund of $200,000 which was to be established by their joint contributions would make provision for the plaintiff for life and for the children during the life of plaintiff, with remainders of principal over to the children or their descendants in equal shares upon the death of plaintiff.

From the proceeds of sale of her residence property at Great Neck, New York, plaintiff was to contribute at least $100,000, and the defendant was to contribute from his personal fortune whatever balance was necessary to make up the $200,000. It is then provided that " upon the establishment of the Trust " plaintiff will expressly waive any right of election which she may have to take against the will of defendant upon his death, under section 18 of the Decedent Estate Law.

Defendant represented that he had executed a last will and testament, and codicil thereto, in 1932, whereby he " devised and bequeathed one-third of his net estate " to plaintiff and contracted to irrevocably maintain the will and codicil in full force and effect and to make no changes therein " in so far as the rights and interests·" of the plaintiff are concerned " prior to the establishment of the permanent Trust Fund." The agreement states that it is " the express intent and desire of the parties hereto that a permanent Trust Fund be established for the support and maintenance " of the wife and children.

The following provision is also contained in the agreement: " In the event of the establishment of said Trust in the full amount of $200,000, thereafter and from thenceforth the party of the first part shall be freed and discharged of any further obligation to the party of the second part and all further direct payments under the provisions of Paragraph Second hereof shall cease and terminate, and likewise the Trust provided for under Paragraph Fourth hereof shall be dissolved and the

securities or other property then held as security for the direct payments called for in Paragraph Second hereof shall be delivered over to the party of the first part or his nominee." A further provision is that the agreement "shall at all times govern and control the rights and obligations of the parties and their children" in the event of a divorce by either party.

Subsequent to the execution of the permanent agreement and in February, 1933, defendant procured a decree of divorce in Nevada. The Nevada court had jurisdiction of the parties, the plaintiff herein having appeared and answered the complaint. In the divorce decree, the separation agreements hereinabove referred to were "ratified, confirmed and approved, and fully adopted * * * in all respects as if said agreements were annexed hereto and/or set out in full as a part hereof," and the decree contained the further provision that the maintenance of this plaintiff and the support, maintenance and education of the two children "is decreed in accordance with, and pursuant to, the terms and provisions of said two written agreements."

Defendant remarried within a few weeks after the divorce. He continued to make payments of $12,000 per year as provided in the separation agreement, for the support of his wife and children until July, 1941, when the plaintiff remarried. From that time, he refused to make any further payments.

The present action was brought by plaintiff to recover the balance alleged to be due for the remainder of the year 1941 under the permanent separation agreement of December 7, 1932, and the decree of the Nevada court.

The Special Term ruled that there is a triable issue as to whether or not payments by the husband were to be terminated on the marriage of the wife. The wife contends that the terms of the separation agreement and of the decree are unambiguous, and not in dispute; that their meaning and construction present a question of law for the court and not an issue of fact to be determined upon a trial. The husband concurs in this view.

The principal question presented is whether plaintiff is entitled to the periodic payments provided for in the separation agreement notwithstanding her remarriage.

There was no express provision that the payments were to be terminated upon plaintiff's remarriage. Defendant asserts that unless otherwise expressly provided, an agreement to pay alimony ceases upon the happening of either of two contingencies: (1) the remarriage of the wife or (2) the death of the husband.

It would seem, however, that here defendant was not con-cerned with the contingency of plaintiff's remarriage. The possibility of plaintiff's marrying again was contemplated by the parties and was to have no effect on defendant's obligations under the agreement which is " at all times [to] govern and control the rights and obligations of the parties and their chil-dren." There are statements in the agreement which show that neither party had any objection to the other's obtaining a divorce and which indicate the likelihood that defendant him-self would obtain the divorce, as he did, in fact, a short time after its execution.

The evident purpose of defendant was to make a financial settlement which would leave him free to obtain a divorce, to remarry, and to relieve him entirely of his obligations as a husband and as a parent regardless of the age of the children or of the subsequent status of plaintiff. Until the trust fund is established, the agreement provides that plaintiff is to receive direct payments from defendant for her support and mainte-nance and for the support and maintenance of the children, with the additional circumstance that in the event of the death of defendant prior to the establishment of the trust fund, plain-tiff is to receive one third of his net estate for the same purpose.

As yet, the permanent trust fund has not been established. Plaintiff's " residence property " cannot be sold for $100,000, although diligent and continuous efforts to sell have been made by plaintiff throughout the years.

The arrangement between the parties, we think, was in the nature of a property settlement. The yearly payments were to be used as support for the wife and children until the trust was created, the income from which would thereafter perma-nently serve the same purpose. The annual payments were all a part of the plan. It seems clear that such payments in the circumstances were not to be subject to the limitation asserted by defendant that alimony is not payable after remarriage of the wife, unless otherwise expressly agreed. The provisions of the agreement manifest an intention of the parties that the pay-ments to be made each year were not to cease upon a remarriage by plaintiff. " Where a husband voluntarily settles property upon a wife, either as a matter of love and affection, or duty or in settlement of disputes between them, the conveyance is absolute and uninfluenced by the fact that she obtains a divorce and subsequently remarries." (*West* v. *Burke*, 165 App. Div. 667, 672, affd. 219 N. Y. 7.)

Defendant also attacks the validity of the separation agreement asserting it to be illegal and unenforcible in the courts of New York in that it was a contract tending to dissolve the marriage. This claim is based upon a provision of the agreement of December 7, 1932, which conditions payment to the wife for her maintenance and support upon her personal submission to the jurisdiction of any court of competent jurisdiction in any action for a divorce which may thereafter be commenced by defendant. It also provides that plaintiff is not entitled to any payments if she does anything " which may have any material tendency to delay or hinder the filing and entry as promptly as the law may allow of a decree or judgment of divorce by any such court of competent jurisdiction."

In *Matter of Rhinelander* (290 N. Y. 31) the Court of Appeals in an opinion by Judge Desmond stated that it would hold unenforcible agreements which have a direct tendency toward dissolving marriages. We do not believe that the provision in the agreement of December 7th necessarily comes within such condemnation. In any event, the Nevada decree obtained by the husband and acted upon by him provided that the two agreements in writing " are ratified, confirmed and approved, and fully adopted by this court in all respects. " The foreign decree which approved and made the agreement of December 7, 1932, a part thereof estops defendant from attacking the agreement here. (*Hoyt* v. *Hoyt,* 265 App. Div. 223, leave to appeal denied by the Court of Appeals 290 N. Y. 941; *Fales* v. *Fales,* 160 Misc. 799, affd. 250 App. Div. 751; *Goldberg* v. *Mayer,* 243 App. Div. 477, affd. 270 N. Y. 660; *Frost* v. *Frost,* 260 App. Div. 694.)

What this court said in *Hoyt* v. *Hoyt* (*supra*) is directly in point. We ruled in that case that where a Nevada court has jurisdiction of the persons of the parties and of the subject matter, as it had here, its decree, which adopts, embraces and incorporates a separation agreement entered into between the parties prior to its date of entry, under the full faith and credit clause of the United States Constitution (art. IV, § 1) is deemed conclusive here as well as in Nevada; that the foreign court must be held to have passed upon the legality of the separation agreement, and that neither the decree nor the agreement is thereafter subject to collateral attack.

In *Matter of Rhinelander* (*supra*) the court said at page 36: " It is no part of the public policy of this State to refuse recognition to divorce decrees of foreign States when rendered on the appearance of both parties, even when the parties go from this State to the foreign State for the purpose of obtaining the

decree and do obtain it on grounds not recognized here. [*Glaser* v. *Glaser*, 276 N. Y. 302.] Nor is it our public policy to refuse enforcement to a separation agreement incorporated into such a foreign divorce. (*Hess* v. *Hess*, 276 N. Y. 486.) "

Defendant also insists that the plaintiff cannot recover upon the Nevada decree, as distinguished from a recovery on the separation agreement, because there is no sum stated or debt of record to enforce. However, both in his answer and by his motions, defendant concedes the overdue payments of $5,700 as claimed by plaintiff are due and unpaid and that the Nevada court has decreed that these must be paid. In the circumstances we think that under the full faith and credit clause of our Constitution plaintiff is entitled to judgment for the amount claimed. (*Hess* v. *Hess*, 276 N. Y. 486; *Goldberg* v. *Mayer*, 243 App. Div. 477, affd. 270 N. Y. 660; *Van Horn* v. *Van Horn*, 196 App. Div. 472.)

The order appealed from should be modified by granting plaintiff's motions for judgment on the pleadings and for summary judgment, and as so modified, affirmed, with twenty dollars costs and disbursements to the plaintiff.

DORE, J. (dissenting). The essential issue is whether plaintiff, defendant's divorced wife, is entitled to a continuance of payments by way of alimony or support from defendant, her first husband, after she has remarried and is also being supported by a second husband.

As the defendant remarried in 1933 and acted upon the validity of the Nevada decree divorcing his wife, he may not here question the legality of that decree or the separation agreement incorporated by reference therein.

Both parties contend that the separation agreement is unambiguous, its construction purely an issue of law and both claim to be entitled to judgment. The agreement sets forth the " understanding " of both parties as to the " obligations " of the husband and the " rights " of the wife subsequent to December 31, 1932. It provides that the provisions of the agreement shall control " the rights and obligations of the parties and their children * * * with respect to alimony or other provisions with respect to maintenance and support. "

Paragraph Second of the agreement, subdivisions (a), (b) and (c) all refer to what the wife shall receive " for her maintenance and support and the maintenance, support and education of their children. " Subdivision (a) provides that until the establishment of the trust fund mentioned in paragraph Fifth the husband shall pay for such " maintenance and sup-

port '' thirty-three and one-third per cent of his annual earnings; subdivision (b) provides that during the year 1933 the husband guarantees that payment shall not be less than $12,000, payable $1,000 a month; and subdivision (c) provides that during the calendar year 1934 '' and each and every subsequent year, '' he will pay for such '' maintenance and support '' fifty per cent of his earnings, not exceeding $12,000 in each year, or at the wife's election thirty-three and one-third per cent. This part of the agreement referring to '' maintenance and support '' is devoid of any reference to payment during the wife's life or after her remarriage or after the husband's death.

The clause that payments shall continue until the establishment of the trust fund is contained in subdivision (a), which provides for only thirty-three and one-third per cent of the earnings. This is not the subdivision on which the former wife's cause of action is based. She sues under subdivision (c) which provides for fifty per cent of the earnings. If the wife's contention is correct under this clause there would result a perpetual obligation to continue payments for support based on a matrimonial relation not only after the wife's remarriage, but in the logic of the former wife's construction of the agreement, against the husband's estate after his death. The reference to the establishment of the trust merely indicates an event, the happening of which terminates liability on that part of the promise.

Under that part of the agreement, the husband between January, 1933, and July, 1941, has paid plaintiff $122,532.68 for the support of the wife and children, averaging over $14,000 a year for eight and one-half years. Since July, 1941, the plaintiff has remarried and there is no claim that the new husband's income is not sufficient to support plaintiff with all she enjoyed through the use of the payments made from 1933 to 1941 by her first husband. She now seeks to compel the first husband to continue such payments for her support arising out of his matrimonial obligations to her and her rights as a wife against him, although she has remarried and the children of the marriage are twenty-nine or thirty years of age.

Concededly the contingent trust fund, if it were established, would be a property settlement. In contrast to the language in paragraph Second, paragraph Fifth relating to the trust fund, expressly provides that payments shall continue '' during the life of the [wife].'' The omission of such language in paragraph Second relating to the husband's obligation for '' maintenance and support '' indicates that the parties did not

intend such support to continue for the wife's life or after her remarriage.

The establishment of the trust fund was not made obligatory; it was expressly made contingent and at the option of the wife. She was to contribute $100,000 from the proceeds of the sale of the Great Neck residence donated to her by the husband before the separation. If she contributed this amount, the balance of $100,000 was to be contributed by the husband. These contributions were contingent and only to be made as soon " as funds are available. " The trust fund was never established because *inter alia* the Great Neck property could not be sold at a price that would yield the required $100,000. If the trust fund were set up, it became a property settlement providing by its terms that payment be made during the life of the wife with the remainder to the children. That contingency never happened. Through no fault of either side, so far as this record discloses, the trust fund was never set up. The agreement therefore remained an agreement by the husband to fulfill matrimonial obligations for the maintenance and support of his wife and children.

Section 1172-c of the Civil Practice Act expresses the public policy of this State that a wife who has a husband with whom she is living should be supported by him and not by one from whom she has been previously divorced. That section provides that on proof of the marriage of the wife after a final judgment of divorce has been rendered the court " must " modify the final judgment and any orders made with respect thereto by annulling the provisions directing payments of money for the wife's support. The purpose of the act was to prevent a woman who had remarried after a divorce from being supported by her former husband when the former wife was married to and being supported by a second husband. (*Kirkbride* v. *Van Note,* 275 N. Y. 244; *Mowbray* v. *Mowbray,* 136 App. Div. 513.) In *Sleicher* v. *Sleicher* (251 N. Y. 366, 371) CARDOZO, Ch. J. said: " The purpose of an award of alimony is support for a divorced wife not otherwise supported. This purpose is perverted by imputing a dual obligation. "

In *Kirkbride* v. *Van Note* (275 N. Y. 244, 249) the Court of Appeals said: " The provision of the Civil Practice Act is mandatory. Where a former wife has remarried and an application is made for modification of the judgment with respect to the direction of payment of money for the support of the former wife, the court ' must modify,' and cannot in its discretion refuse to do so. Alimony is awarded for present main-

tenance, and ' as a matter of public policy a wife who has a husband with whom she is living should be supported by him and not by one from whom she has been divorced.' (*Schley* v. *Andrews*, 225 N. Y. 110, 114.) The law recognizes the unfairness of requiring a husband to pay alimony for a period during which his former wife is married to another. \* \* \* The modification is not limited to the time subsequent to the application. It applies *nunc pro tunc* as of the time of the remarriage to all unpaid alimony. To hold otherwise would enable a woman to conceal her remarriage and thereby obtain alimony from her former husband while she is living with a new spouse.''

In *Wilson* v. *Hinman* (182 N. Y. 408) it was held that the general obligation to pay alimony awarded to a wife by a judgment of absolute divorce ceased at the death of the husband, and the fact that the decree awarded to a wife as alimony a certain amount annually '' so long as she shall live '' also required the husband to give the wife a mortgage on real estate as security for the payments so long as she should live did not enlarge the husband's obligation and the lien of the mortgage terminated at his death.

This must be the public policy of any State that rests on monogamy in contradistinction to polyandry. That public policy does not, it is true, strike down contracts in which the husband has *explicitly* agreed as a part of the separation agreement to assume obligations supplementing the obligation arising from the matrimonial relation and to make payments to the wife after her remarriage or during her natural life. (*Galusha* v. *Galusha*, 116 N. Y. 635; *Carpenter* v. *Osborn*, 102 N. Y. 552; *Frank* v. *Correll*, 237 App. Div. 849.) But here there is no such agreement so far as the provisions for '' support '' are concerned.

The Nevada decree relied on by plaintiff insofar as it incorporated the separation agreement is not a decree for a fixed or stated sum, the amount payable depending upon fluctuating earnings of defendant and the election to be made by plaintiff. It does not specify the amounts payable for the support and maintenance of plaintiff and the two children who were minors when the decree was made and who are now nearly thirty years of age and no longer entitled legally to support.

The order appealed from, insofar as it denies defendant's motion for judgment on the pleadings and summary judgment, should be reversed, and such motions granted and judgment dismissing the complaint should be entered, with costs to the defendant.

CALLAHAN, J. (dissenting). It is my view that the clause in the agreement providing that it is " at all times [to] govern and control the rights and obligations of the parties and their children," read in the light of the circumstances of its execution, presents an ambiguity as to whether the parties intended it to persist after the remarriage of the wife, and thus an issue of fact is presented to be determined at a trial.

The Nevada judgment is not entitled to full faith and credit for it is not a judgment for a fixed or stated sum and, therefore, not a debt of record. (*Lynde* v. *Lynde,* 162 N. Y. 405, affd. 181 U. S. 183.)

I dissent and vote to affirm.

MARTIN, P. J., and UNTERMYER, J., concur with COHN, J.; DORE and CALLAHAN, JJ., dissent, each in a separate opinion.

Order modified by granting plaintiff's motions for judgment on the pleadings and for summary judgment, and as so modified, affirmed, with twenty dollars costs and disbursements to the plaintiff.