Frank A. Q-ulotta, J.
This is a motion for alimony pendente lite and counsel fee in a separation action which includes general allegations of cruel and inhuman treatment, conduct on the part of the defendant which has made it unsafe for plaintiff to cohabit with him, abandonment, refusal and neglect of the defendant to provide for plaintiff, and adultery.
The defendant has made a cross motion for summary judgment, pursuant to rule 113 of the Rules of Civil Practice, asking that the complaint be dismissed on the ground that the parties were divorced in the State of Alabama by decree dated June 16, 1958, issued by the Circuit Court of that State in the Tenth Judicial District. In support of his contention defendant has submitted documentary evidence consisting of a power of attorney executed by the plaintiff on May 31, 1958, authorizing one William L. Allison to appear for her in the action commenced by this defendant against her in the State of Alabama, an answer and waiver signed by her and the final decree of divorce.
Plaintiff counters by saying that she did not know what she was signing and that defendant “ (threatened) the plaintiff with *258 bodily harm unless she executed some documents which were thrust under her nose.”
It appears that the parties were married on July 18, 1952. There is no issue of this union although plaintiff has a daughter by a prior marriage. On April 18, 1958 the parties separated, plaintiff returning with her daughter to the family home in Sunbury, Pennsylvania, and the defendant remaining in Mount Vernon, New York, where they then lived.
Plaintiff contends that the reason for the separation was that defendant no longer desired to live with her. On the other hand, defendant says that plaintiff just packed her belongings and with her daughter went to reside in Sunbury, Pennsylvania, because she could not live in New York and got too homesick and lonesome. Defendant’s version seems to be substantiated by a letter postmarked May 8, 1958, sent by plaintiff from Sunbury, Pennsylvania, to defendant at Mount Vernon, New York, wherein she says, in part: “ as I told you don’t think I’ll ever live in N. Y. again. I get too homesick & lonesome * * * Maybe it is best we call it quits as I don’t feel you could settle here ever & you have a good job so please keep it. In time I feel you will probably find a nice girl. There is no one else I want & probably never will marry again. If I ever do it will be a surprise to me. So if you want to go out go. Also in time you can get a divorce if you want as I won’t stop you.” The letter is very solicitous and written in a very friendly and understanding tone. It ends as follows: “ Be good & take care of yourself. May God Bless You. Love, Loretta.”
The Alabama documents above referred to were signed by her on May 31, 1958, some three weeks later, when defendant visited her in Pennsylvania. The power of attorney was executed before a notary public in Sunbury and her signature to the answer and waiver was witnessed by the same notary.
Apparently both parties felt that a divorce was the only solution because on May 20, 1958, defendant wrote to plaintiff: “If you feel that divorce is our solution, why don’t you see about obtaining one in Sunbury there. You have established a residence there and know a great many people. I would be more than willing to shoulder whatever expense would be incurred in such action. ’ ’ Plaintiff could not have been surprised by being given the Alabama papers to sign for the correspondence on both sides was leading to just that. On May 26, 1958 she received a letter from defendant stating: “ I cannot see much practical sense in us being married when you are out there in Sunbury and I am working and trying to get along up here *259 alone. My lawyer is a very nice man and he feels that a clean break is the best thing for both of us under the circumstances. I do want you and Phyllis to have all your personal belongings and things that you might want. That is why I am coming out and I can bring the papers for you to sign in order to make the necessary preparations for divorce.”
For two years plaintiff did nothing and has now suddenly brought this action on very tenuous allegations, with no facts.
There is no need to discuss the lack of probability of success in the plaintiff’s matrimonial action, since the only point involved is the validity of the Alabama decree. Concededly the defendant has not supported the plaintiff since it was obtained and that decree must be the justification for not having done so, or there is none.
Insofar as the foreign decree is attacked because the plaintiff was not a bona fide resident, that avenue is no longer open, since it cannot now be questioned in Alabama on that ground, neither can it be collaterally attacked in New York, and it must be accorded full faith and credit here. (Boxer v. Boxer, 7 A D 2d 1001; Sherrer v. Sherrer, 334 U. S. 343.)
The question of alleged duress presents a different problem. Were we to have a case of true duress, i.e., coercion in forcing defendant to sign an authorization of appearance so overwhelming that the act would not represent a voluntary act of the defendant at all, it may be assumed that such facts could form the basis for a direct attack in the forum of the decree or for an oblique attack here. (Finan v. Finan, 47 N. Y. S. 2d 429.)
The facts here do not support such a conclusion; in fact they point the opposite way.
However, to bring this case within the new rule 113 which permits a defendant in a matrimonial action to move for summary judgment when his defense is based on documentary evidence or official records it is necessary to consider whether the plaintiff’s letter of May 8, 1958, fits into the first category.
The divorce decree is undoubtedly an official record, but the lettér is needed to prove the absence of duress. I think a letter may properly be considered a document. Richardson on Evidence ([8th ed.], § 2) states: “Documentary evidence is evidence in the form of a writing or writings. White v. Merchants Despatch Co., 256 App. Div. 1044, 10 N. Y. S. (2d) 962; Schusterman v. C. & F. Caterers, 192 Misc. 564, 566, 77 N. Y. S. [2d] 718. It has been more elaborately defined as follows: a document is ‘ any substance having any matter expressed or described upon it by marks capable of being read ’, and when ‘ produced for the inspection of the court * * * *260 such documents are called documentary evidence.’ Chase’s Stephen’s Digest of the Law of Evidence, pp. 3, 4.” Tripp’s Guide to Motion Practice (p. 289) states: “ The documentary proof contemplated by the rule is not defined or limited. Any document which meets a dictionary definition of that term is a document within the meaning of Buie 113, B. C. P., as it need not 1 completely and conclusively establish the defense, without resort to extrinsic or fragmentary connecting links of proof supplied by affidavit or scattered entries or memoranda. ’ (Chance v. Guaranty Trust Co. of New York, 173 Misc. 754, 20 N. Y. S. [2d] 635, aff’d. 257 App. Div. 1006, 13 N. Y. S. [2d] 785, 285 N. Y. 802.) ” Black’s Law Dictionary ([4th ed.], p. 568) defines documentary evidence as: “ Evidence supplied by writings and documents of every kind in the widest sense of the term; evidence derived from conventional symbols (such as letters) by which ideas are represented on material substances. Such evidence as is furnished by written instruments, inscriptions, documents of all kinds, and also any inanimate objects admissible for the purpose, as distinguished from 1 oral ’ evidence, or that delivered by human beings viva voce. People v. Purcell, 22 Cal. App. 2d. 126, 70 P. 2d. 706, 709.”
The doctrine of “ divisible divorce ” does not obtain where there was in personam jurisdiction to support the foreign decree and thus the determination of the duress issue likewise disposes of the applicability of section 1170-b of the Civil Practice Act.
The plaintiff’s motion is denied and the defendant’s cross motion is granted. Short-form order signed.