Bernard S. Meyer, J.
In this action plaintiff wife seeks to set aside a Mexican divorce obtained by defendant on February 26, 1962 and a separation agreement executed February 20, 1962 and to obtain a separation. Defendant husband’s answer sets up affirmative defenses of laches and estoppel and specifically pleads that a prior separation action between the parties was tried for eight days between February 7 and 19,1962 before Mr. Justice G-ulotta, that during the course of that trial a settlement was reached, that plaintiff voluntarily executed a power of attorney for a Mexican divorce by reason of which defendant obtained a valid bilateral Mexican decree of divorce. Plaintiff now moves to strike the latter allegations as prejudicial and for judgment dismissing the defenses. Defendant cross- *996 moves to dismiss on the grounds that there is, in view of the Mexican divorce, no jurisdiction of the subject matter and that the complaint fails to state a cause of action. Defendant also asks summary judgment. For the reasons hereafter stated plaintiff’s motion is in all respects denied and defendant is granted judgment dismissing the complaint.
The thrust of plaintiff’s action is two-pronged: (1) that execution of the power of attorney was a condition of execution of the separation agreement and, therefore, both were and are void as against public policy; (2) that her condition at the time the separation action was tried was such and defendant made such threats on the one hand and so concealed his financial position on the other that she did not knowingly sign the separation agreement and power of attorney, which were rather the result of defendant’s fraud, duress and overreaching. In the face of such charges the setting in which the documents were executed is of particular significance. Evidence .concerning the prior trial before Mr. Justice Gtjlott-a will, therefore, be admissible. While it was not essential to plead the background facts in as much detail as defendant’s answer does, it was natural to do so in response to a similarly detailed complaint. The facts alleged are part of the tapestry against which decision must be made. The motion to strike them as prejudicial must, therefore, be denied.
The motion to dismiss the defenses is predicated on the public policy enunciated by section 5-311 of the General Obligations Law (formerly Domestic Relations Law, § 51) against contracts to dissolve a marriage. However, that policy yields to estoppel by judgment, whether the judgment be that of another State of the United States or of Mexico (Fink v. Goldblatt, 18 A D 2d 629, affd. 13 N Y 2d 957 [Mexican decree] ; Fry v. Fry, 279 App. Div. 122, affd. 304 N. Y. 889 [Nevada decree]; McLinden v. McLinden, 286 App. Div. 1033, app. den. 286 App. Div. 1105 [Mexican decree]; Graham v. Hunter, 266 App. Div. 576 [Nevada decree]; Hoyt v. Hoyt, 265 App. Div. 223, mot. for lv. to app. den. 290 N. Y. 931 [Nevada decree]; Fates v. Fates, 160 Misc. 799, affd. 250 App. Div. 751 [Nevada decree]; Neuman v. Neuman, 44 Misc 2d 232 [Mexican decree]). A fortiori it will yield to the equitable estoppel which defendant pleads: that he remarried in reliance on the Mexican decree in October, 1964, two and one-half years after the decree was obtained and that plaintiff did nothing to question the validity of the divorce until this action was begun March 5, 1965, some six months after the marriage. A “ spouse who by acts iiidicates acquiescence in the divorce and so induces the other spouse *997 to act upon the assumed validity of the decree cannot be heard to contest it” (Weiner v. Weiner, 13 A D 2d 937, mot. for lv. to app. den. 14 A D 2d 671; Schneider v. Schneider, 232 App. Div. 71, on second appeal 238 App. Div. 792, affd. 263 N. Y. 641; Schuman v. Schuman, 137 N. Y. S. 2d 485; Dodge v. Dodge, 98 App. Div. 85; cf. Rosenstiel v. Rosenstiel, 21 A D 2d 635, 639 (concurring opinion). The defenses are, therefore, sufficient. Indeed, though it is not necessary so to hold in view of the conclusion hereafter reached, it may well be that on the papers presented on this motion defendant is entitled to summary judgment on the defenses. Although plaintiff’s affidavit shows that she knew on September 15, 1964 that he was about to remarry and acknowledges that defendant’s attorney in the separation action was under no duty to communicate with defendant “ in view of the fact that their relationship was at an end ”, and although plaintiff’s attorney’s affidavit admits that when he communicated with the attorney who represented defendant in the separation action (and has since been retained in this action) he was told flatly that the attorney “ did not intend to do anything about my phone call ” neither plaintiff nor her attorney made any effort to communicate with defendant directly, and in fact took no action at all for some six months thereafter.
Jurisdiction of the subject matter exists since the separation agreement is subject to attack as illegal, or because of fraud, duress or overreaching, if the Mexican decree can be set aside (Oppenheimer v. Oppenheimer, 11 N Y 2d 838; Bunin v. Bunin, 27 Misc 2d 173) and since the Mexican decree may be collaterally attacked if jurisdiction of the Mexican court was acquired through fraud, coercion or duress (Kantrowitz v. Kantrowitz, 21 A D 2d 654; La Barr v. La Barr, 278 App. Div. 995; Averbuck v. Averbuck, 270 App. Div. 116; Prime v. Hinton, 244 App. Div. 181; Stauffer v. Stauffer, 26 Misc 2d 254; Matter of White v. White, 26 Misc 2d 631; Ticknor v. Ticknor, 23 Misc 2d 257; Towers v. Towers, 21 Misc 2d 56). Neither the parol evidence rule (Niman v. Niman, 15 Misc 2d 1095, affd. 8 A D 2d 793; see Viles v. Viles, 14 N Y 2d 365); nor the general merger clause in the separation agreement entered into by the parties (Sabo v. Delman, 3 N Y 2d 155; cf. Danann Realty Corp. v. Harris, 5 N Y 2d 317; Carlinger v. Carlinger, 21 A D 2d 656) would exclude extrinsic evidence to establish its invalidity by reason of fraud, duress or illegality (Richardson, Evidence [9th ed.], §§ 586, 586a, 587).
Plaintiff’s claim of fraud is predicated on defendant’s failure to disclose the value of his interest in certain corporations *998 which it is claimed he later sold for $1,500,000 and on overreaching in that the separation agreement made no provision for her support after defendant’s death or with respect to income taxes that would be payable on the amounts she received under the agreement, and made inadequate provision for her medical expenses. The transcript of the separation trial, however, shows that on the opening day of the trial defendant’s counsel took the position “ that the good will of the corporations plays no part in this case ” and argued as follows:
“Now I respectfully submit it is improper for the plaintiff to inquire into the financial worth and assets of the defendant in order to determine the proper measure of support for alimony, where there is no question raised by the husband with regard to the sufficiency of his income. All of this argument, of course, presupposes a finding in favor of the wife, which we are not conceding at this time. In any event, there is required support for the children, so to some extent this must be gone into no matter what we do, or whatever the finding is by your Honor, but the question involved here basically is going to be are we confined to the standard of living that the parties enjoy, and the defendant raises no question about his ability to pay whatever your Honor shall determine, or may the plaintiff go into the assets of the defendant in this case?
“ Now, if we are confined to the first part of this, then anything having to do with the corporations is completely superfluous. In fact, anything having to do with the assets of the parties is completely superfluous, because of the fact that the defendant states now, for the record, that he is capable of paying whatever your Honor determines should be paid in keeping with the standard of living that the parties enjoy,- if your Honor should find it reasonable. We say that it is within the income of the husband and that he is capable of paying. We say further that it is proper to make full inquiry into what that -standard of living was in order to determine what it should be; but, we say, to go further and inquire into assets is needless and improper, because there is no such issue in this case, and whether this man be worth $5 or five million plays no part in this Court’s determination, respectfully, we say, since we raise no issue as to his ability to pay.”
The claim that defendant concealed his financial position is thus negated by the trial record in the separation action. In the face of the flat statements on defendant’s behalf that “ there is no question raised by the husband with regard to the sufficiency of his income”, “no question about his ability to pay what-
*999 ever your Honor shall determine ” and “ we raise no issue as to his ability to pay ’ ’, no triable issue exists as to the claim of fraudulent concealment (Vallee v. Vallee, 154 Misc. 620, affd. 247 App. Div. 874; Bowen v. Bowen, 22 Misc 2d 496; Schuman v. Schuman, supra). Plaintiff’s reliance on the overreaching cases is misplaced. While a New York decree may be modified, notwithstanding a separation agreement incorporated but not merged in the decree, when the wife is in danger of becoming a public charge (McMains v. McMains, 15 N Y 2d 283) and while a separation agreement which has not been incorporated may be set aside on the grounds that it is unfair or inequitable (Haas v. Haas, 298 N. Y. 69; Kyff v. Kyff, 286 N. Y. 71; Tirrell v. Tirrell, 232 N. Y. 224; Hamlin v. Hamlin, 224 App. Div. 168; Harding v. Harding, 203 App. Div. 721, affd. 236 N. Y. 514) no case has been presented which holds that a separation agreement incorporated in a foreign divorce judgment may be set aside without first setting aside the foreign judgment or that the inequity of the agreement, as distinct from fraudulent concealment of facts on which the agreement was based, is a ground for invalidating the foreign decree. Plaintiff herein received a $60,000 house free and clear and $15,000 per year for support of herself and the two children. Clearly, therefore, she is in no danger of becoming a public charge and the court need not consider whether the McMains rule can be applied when what is involved is a Mexican rather than a New York decree. It holds that the inequities to which plaintiff refers constitute no basis on which to set aside the Mexican decree and that, assuming without deciding that the inequities referred to would be a proper basis for setting aside the agreement, plaintiff may not set aside the separation agreement on the ground of overreaching unless the Mexican decree is first set aside (Kepner v. Kepner, 12 A D 2d 204).
In broad outline, plaintiff’s claim of duress is predicated on a long history of marital difficulty including an abortive Nevada decree which plaintiff had had set aside, plaintiff’s weakened physical condition at the time the separation agreement and power of attorney were signed, her religious scruples as a Catholic against divorce, and defendant’s threat to bring a proceeding for the custody of the children. That plaintiff was suffering from nervous tension on February 9, 1962 is indicated by the report of her doctor which she has submitted, but something more than that is required to establish duress. To invalidate the power of attorney plaintiff must show that in executing it she acted as a result of defendant’s threat. The *1000 facts that the power of attorney was signed during- the trial of plaintiff’s separation action, that plaintiff was acting with the advice of her attorney, that she could have obtained an adjudication of her rights by simply trying her separation action to a conclusion, and that the only threat alleged was that defendant would seek custody of the children, which he had a legal right to do, distinguish the instant case from Oppenheimer v. Oppenheimer (11 N Y 2d 838, supra) upon which plaintiff relies. The court finds that the version of the facts most favorable to plaintiff does not establish a triable issue concerning duress (Vallee v. Vallee, supra; Gagliano v. Gagliano, 56 N. Y. S. 2d 619, affd. 269 App. Div. 1025; Finan v. Finan, 47 N. Y. S. 2d 429; see Ticknor v. Ticknor, supra; Lilienthal v. Lilienthal, 192 Misc. 1022; cf. Bunin v. Bunin, supra; Towers v. Towers, 25 Misc 2d 821).
Plaintiff’s claim of illegality is not so readily disposed of, however. True, most of the cases arising under section 5-311 of the General Obligations Law turn on whether the husband has bought his freedom by agreeing to pay substantially more than would be allowed the wife under New York law (Reed v. Robertson, 302 N. Y. 596; Schley v. Andrews, 225 N. Y. 110; Gould v. Gould, 261 App. Div. 733, mot. for lv. to app. den. 262 App. Div. 833; Niman v. Niman, 15 Misc 2d 1095, affd. 8 A D 2d 793; Tates v. Tates, 183 Misc. 934) whereas in this case plaintiff’s claim is that she did not receive enough (see Kepner v. Kepner, supra). Monetary inducement is but one phase of the problem, however. A contract may also be invalidated by section 5-311 “if it £ stimulate the divorce ’ or is £ promotive of divorce ’ ” (Matter of Rhinelander, 290 N. Y. 31, 39) or “ had a direct tendency £ to alter or dissolve the marriage ’ ” (Viles v. Viles, 14 N Y 2d 365, 367) (see, also, Hettich v. Hettich, 301 N. Y. 447; Murthey v. Murthey, 287 N. Y. 740; Fisher v. Fisher, 43 Misc 2d 905). Plaintiff swears that she £ £ was requested to sign the Mexican power of attorney before the other document * * * was told that the defendant would not sign the separation agreement unless I signed the Mexican power of attorney ”, and her complaint alleges “ that the defendant refused to execute the said separation agreement unless plaintiff executed the said power of attorney for her appearance in the divorce proceeding in Mexico.” Defendant, of course, denies that execution of the power of attorney was a condition of execution of the separation agreement, but that simply raises a question of fact. The issue of illegality would, therefore, have to be tried were it not for the estoppel of the Mexican judgment.
*1001 Plaintiff argues that Fink v. Goldblatt (18 A D 2d 629, affd. 13 N Y 2d 957, supra) and the other estoppel by judgment cases cited above can be distinguished because the party against whom the estoppel operated had in each case participated actively in the foreign proceeding, whereas plaintiff herein did no more than sign an appearance in New York. Recognizing that distinction, the court concludes nonetheless that the estoppel operates against the present plaintiff. Appearance alone is insufficient to create an estoppel when the appearance has been obtained by fraud or duress for in such case the appearance is a nullity; there has in fact been no consent. Such effect upon the Mexican decree in this case as is accorded section 5-311 of the General Obligations Law will arise not from the absence of consent but in spite of its presence. The claimed illegality is not, as is fraud or duress, accompanied by an inability because of the act at issue to raise the defense in the foreign proceeding (see Prime v. Hinton, 244 App. Div. 181, supra). It thus partakes more of the nature of fraud perpetrated upon the foreign court with respect to the establishment of residence, as to which it has long been settled law that, since the issue could have been raised before the foreign court and was not, the foreign judgment is binding (Senor v. Senor, 272 App. Div. 306, affd. 297 N. Y. 800). Nor is the line of cases based upon Señor v. Señor, to be distinguished on the ground that what is here involved is a fraud upon the law of New York rather than of the foreign State, for the Court of Appeals in construing the predecessor of section 5-311 of the General Obligations Law has stated the reach of New York public policy: “ It is no part of the public policy of this State to refuse recognition to divorce decrees of foreign states when rendered on the appearance of both parties, even when the parties go from this State to the foreign state for the purpose of obtaining the decree and do obtain it on grounds not recognized here ’ ’ (Matter of Rhinelander, supra, pp. 36-37; see, also, Rosenstiel v. Rosenstiel, 21 A D 2d 635 and cases cited p. 638). Clearly to be borne in mind, of course, is the fact that what is now being-considered is the validity of the Mexican divorce, not the validity of the separation agreement. Viles v. Viles (supra) and the other cases dealing with section 5-311 of the General Obligations Law cited above, all concerned the validity of a separation agreement. No case has been found which invalidated a Mexican divorce because the appearance upon which it was based was signed in violation of that section. It does no violence to the doctrine of estoppel by judgment to invalidate a separation agreement which was not incorporated in the foreign decree, for *1002 it forms no part of the foreign adjudication. However, to invalidate the appearance upon which the foreign decree was based goes to the very roots of the foreign judgment.
The same doctrine of estoppel by judgment prevents application of the rule of Viles v. Viles to the separation agreement in the present case, for the complaint shows on its face that the agreement was incorporated in the decree. Paragraph 26 of the complaint alleges that the Mexican ‘£ decree made reference to the aforesaid separation agreement made February 20, 1962 by incorporating the same therein in its entirety by reference but with the condition that the said decree is not to be merged therein and shall survive the mentioned decree.” By that incorporation the Mexican court determined the validity of the agreement. The agreement may not be set aside, therefore, unless the decree is invalidated (see Cohen, Separation Agreements and Extraterritorial Divorces, 22 Bar Bull. [N. Y. County Lawyers’ Assn.] 174, 179).
It can be argued on plaintiff’s behalf that the policy determining cases such as Senor and Rhinelander involved decrees of the United States, that recognition of a Mexican decree results from comity rather than constitutional requirement, that the predicate of comity is public policy and that the legislative policy enunciated in section 5-311 of the General Obligations Law should take precedence over the policy of comity. The answer is to be found in those cases (Fink v. Goldblatt, supra; McLinden v. McLinden, supra; Neuman v. Neuman, supra) which, notwithstanding the policy of section 5-311 of the General Obligations Law estop attack upon a separation agreement if it has been incorporated in a Mexican decree. In final analysis, plaintiff’s argument on the issue of illegality reduces to the contention that appearance through an attorney authorized by power of attorney is too flimsy a basis upon which to erect an estoppel by judgment. The court holds that appearance alone, so long as based upon actual consent, is sufficient.
In summary, then, the complaint is dismissed because as a matter of law the Mexican decree estops attack upon the decree itself and upon the separation agreement on the ground of illegality or overreaching, and because the factual showing of fraud and duress, on either of which the decree and the agreement could be set aside, is insufficient to raise a triable issue.