ELIZABETH H. STEWART, Plaintiff, v. NEIL J. STEWART, Defendant.

Supreme Court, Livingston County, July 15, 1927.

Husband and wife — separation — agreement made prior to actual separation will be set aside, under Domestic Relations Law, § 51 — agreement procured by coercion will be set aside — agreement set aside for inadequacy of consideration.

A separation agreement executed by the parties hereto is set aside on the grounds that it was executed prior to the actual separation of the parties and, therefore, violates section 51 of the Domestic Relations Law; that it was procured by the defendant through coercion; and that the consideration of the agreement was inadequate, inasmuch as it appears that the consideration was $2,000 while the net estate of the defendant is over $20,000 and his annual net income totals $2,000.

ACTION to set aside separation agreement.

*William A. Wheeler*, for the plaintiff.

*Austin W. Erwin*, for the defendant.

RODENBECK, J. The contract between the parties was not entered into with that calmness which usually accompanies a matrimonial alliance. The defendant was under the influence of liquor at the time, but he was strongly possessed with the idea of contracting a marriage with the plaintiff. He took her to the town clerk and to the justice of the peace who issued the license and performed the ceremony, and prevailed upon them to exercise their public functions at a time of day when such duties are usually laid aside. He persisted until he persuaded them to act. They both testified that he was not intoxicated. The defendant must abide by his act, consciously performed, and his present predicament, as he conceives it, grows out of his unwillingness to recognize his marriage and to discharge the legal obligations which it imposed upon him.

He is married to the plaintiff and was living with her when the separation agreement was made. On the day that the agreement was signed, he may not have been occupying the same room with the plaintiff, but the parties were living under the same roof and to all appearances were sustaining all the relations generally existing between husband and wife. The plaintiff took a few of her personal effects and together they went from their home to Rochester where the separation agreement, previously prepared, was signed. The whole thing was agreed to and prearranged while they were living together under the same roof, and the separation was the result of the agreement and was not the forerunner of the agreement. This is not the living apart that the law contemplates, to give

validity to a separation agreement. While living together husband and wife cannot make an agreement to modify the marriage relation, whether the separation is to occur immediately after signing the agreement, or five minutes, or five days thereafter. It is an agreement to separate in the future if the separation occurs after the execution and delivery of the agreement. Mere disagreement, while living together, is not enough. The parties married December 29, 1925, and separated January 30, 1926, but came together again November 9, 1926, lived in the same house as husband and wife, and did not again separate until the agreement was executed November 26, 1926. Under these circumstances the agreement entered into in this case was void. It was clearly an attempt of married people to modify their marital status, which the law looks upon with disfavor and will not countenance. (*Poillon* v. *Poillon*, 49 App. Div. 341; *Kaufman* v. *Kaufman*, 158 id. 892; *Tirrell* v. *Tirrell*, 107 Misc. 179; 232 N. Y. 224; *Sunderlin* v. *Sunderlin*, 123 App. Div. 421; Dom. Rel. Law, § 51.)

But if any other reason were needed to set aside this agreement (see *Clark* v. *Fosdick*, 118 N. Y. 7), it will be found in the circumstances preceding the execution of the agreement, which indicate that the agreement was not the voluntary act of the plaintiff. The whole history of the married life of these parties shows that the defendant, almost immediately after the marriage, and particularly after his family had talked with him, refused to recognize the marriage and sought a way of avoiding the obligations that it imposed upon him. From the time of his visit to his sister, on the honeymoon, he persistently tried to prevail on the plaintiff to consent to an annulment of the marriage, and when she held back, he resorted to methods of persuasion that, in the eyes of the law, amounted to coercion, and invalidated the act of the plaintiff in making the agreement. The character of this conduct is set forth in the findings and it is unnecessary to repeat them here. The defendant, throughout his married life, was controlled by the idea that he could have his way and must prevail in setting aside the marriage. He lived with the plaintiff for one month and then they separated, and thereafter he again lived with her for a period of about twenty-one days. The reunion was sought by him for the purpose of getting the plaintiff under the same roof with him, where he could compel her by a coercive course of treatment to accede to his wishes. This he succeeded in doing and as a result of his persistent efforts the plaintiff signed the separation agreement, received $60 in cash, a draft for $500 and a promise to pay $1,440 more, in installments. The original arrangement was to pay her $2,000, but for the purpose of holding a club over her to

secure an annulment, the agreement was changed, just before being signed, so as to hold off on the full payment of the consideration long enough to accomplish his purpose to get rid of her.

The consideration for the separation furnishes another reason for setting the agreement aside. Such an agreement must be reasonably fair to the wife or a husband could easily persuade or coerce his wife to accept an inadequate amount and thus relieve himself from the obligation to support her, imposed by law. The defendant had secured a general release of dower and a separation agreement, which only required a part payment of the meager consideration for release from support and maintenance, and if he could secure an annulment of the marriage, he would be foot free, without the payment of anything except the installments paid under the separation agreement or at most the sum of $2,000. The defendant has a net estate of over $20,000, and should have a net income from the 812-acre farm owned by him of at least $2,000. The property of the defendant was stipulated to be worth $46,500, with incumbrances which reduced its net worth to about $20,000, and he had a net income estimated approximately at $2,000, if his property was properly worked, which is the amount of the consideration in the separation agreement. Thus, for the net income for one year, which the defendant surely should realize with good management from a fertile farm of 812 acres, he has attempted to release himself from this alleged obnoxious marriage. He should have been willing to pay more than that. The marriage may not have meant much to him, and, according to present social standards, if annulled, it would not hinder him from contracting another marriage, but it is a serious matter to the plaintiff and may be sufficient to prevent her from making a favorable second matrimonial alliance. A man of the financial standing of the defendant and of his position in the community where he lives, should not be permitted to cast the plaintiff aside as he would an old suit of clothes, of which he has become tired, but should be held up to his obligations, like any other man. He cannot be compelled to live with the plaintiff, but if he chooses to separate from her he must make a reasonable allowance for her support and maintenance. This is an obligation that he cannot rid himself of, either by refusing to provide for her or by inadequately providing for her in a separation agreement, forced unwillingly upon her by conduct which, in the eyes of the law, amounted to coercion. (*Tirrell* v. *Tirrell*, 232 N. Y. 224; *Hungerford* v. *Hungerford*, 161 id. 550.)

The agreement should be set aside, and judgment to that effect is rendered for the plaintiff, with costs.

So ordered.