Jambs C. O ’Brien, J.
Plaintiff and defendant were married in the town of Pittsford, New York, in 1945, and cohabited in New York State for some 12 years thereafter, until the year 1957. There is one child born of the marriage, a girl approximately 13 years of age. In November, 1957, the wife, defendant in the above-entitled action, commenced against her husband (plaintiff in the above-entitled action) an action for divorce in the First Civil Court, Bravos District, City of Juarez, Mexico. The ground of the action was alleged to be incompatibility. Neither party was ever a resident of Mexico and no process of any kind, out of the Mexican court, in the action therein, was ever served upon the defendant therein named, plaintiff in the above-entitled action. The wife was physically present in Mexico on the 14th of November, 1957. She was there apparently for one day only and on that day the decree was granted. In that decree it was set forth that the husband had appeared in the action by an attorney therein named, and that such attorney joined in the wife’s prayer for relief. The wife remarried in Brie, Pennsylvania, on December 23,1957.
Previous to the institution of the Mexican divorce, the wife’s attorney, who is counsel for her in this action, conferred several times with the husband. There is no claim that any fraud was effected by such attorney upon the husband. The husband was informed that the wife proposed to go to Mexico and secure a divorce and apparently the husband agreed that he would sign and acknowledge whatever papers might be necessary to help the wife secure such Mexican decree. This promise is restated in a separation agreement which was executed by both parties on September 13, 1957. On September 13, 1957, in Monroe County, New York, the husband came to the office of his wife’s *1037 said counsel and there executed Exhibit 1. This document consists of two parts. Both parts were signed by the husband. The first part makes certain certifications of fact, among other things that the husband is of legal age, that he knows that the divorce suit is being filed, acknowledges the fact of the marriage and that the temperaments of the two parties are incompatible and accordingly agrees that a divorce should be granted. Finally he purports to submit himself to the jurisdiction of the Mexican court and requests that judgment be granted, dissolving the marriage. The second part purports to be a power of attorney in which it is stated that an attorney at law is retained to appear for the husband in the civil court at the city of Juarez. This was acknowledged before the wife’s attorney, Mr. Grossin, on September 13,1957. At the time that the power of attorney was executed, the line upon which there now appears the name of an attorney, viz.: “Lie. Javier Alvarez M. ”, in typewriting, was in fact blank, with the result that at the time Mr. Kurman signed the power of attorney, he did not select any specific individual to represent him but in fact appears to have handed over to the wife’s New York State attorney, who in turn delegated to the wife’s attorney in the city of Juarez, the task and responsibility of selecting and appointing a lawyer, allegedly to represent in the Mexican action, the absent husband who was being sued for divorce.
The foregoing statement of the facts in this action makes plain the very narrow question of law to be decided, viz.: Did the Mexican court acquire jurisdiction of the husband so as to make the resulting decree of divorce valid and binding upon him? My conclusion is that it did not.
The contention is made by defendant’s counsel that the husband voluntarily submitted himself to the jurisdiction of the Mexican court by appearing in the action by attorney. While in form he appeared by attorney, I conclude that such attorney was not duly authorized to appear for the husband (Bardonek v. Bardonek, 269 App. Div. 861) and accordingly such appearance by the attorney did not constitute an appearance by the husband in the action. (Molnar v. Molnar, 284 App. Div. 948, affg. 131 N. Y. S. 2d 120; Staedler v. Staedler, 6. N. J. 380; Ann. 28 A. L. R. 2d 1291, 1300; MacPherson v. MacPherson, 1 Misc 2d 1049; Querze v. Querze, 290 N. Y. 13.)
The case of Frost v. Frost (260 App. Div. 694) cited by counsel for the defendant, is distinguishable. In the first place, the power of attorney was under attack because it named to represent the defendant husband in a Nevada action, an attorney whom he had never met and who had been in fact selected by *1038 the wife or one of her attorneys. In our case when the husband signed Exhibit 1, the power of attorney with which we are concerned, no name, whatever, appeared in it as the designated attorney. That name was typed in after the power of attorney had been executed by the husband. There are other grounds of distinction including the fact that the divorce decree attacked in the Frost case was one granted by a sister State and not by the court of a foreign country. Counsel for the defendant appears to be in error when in his brief he states that in the Frost case the power of attorney was blank when executed. So far as I can discover (see record, App. Div. Lib., 4th Dept., 15245, Dec., 1940) this is not correct. It appears by the affidavit of the husband at folios 106 and 107, that he did not personally select his Nevada attorney and that the same had been selected by the wife’s Reno attorney. At folio 137 the wife alleges in her affidavit that the husband in writing retained this attorney and authorized him to appear in the action in his behalf. At folios 166 and 167 the husband admits in his affidavit that he did “ sign a written engagement of Mr. McKernon to represent him in Nevada ”. While it was argued by the husband in the Frost action that the selection of a Nevada attorney was not his own independent choice, and that as a result thereof he was not represented in the Nevada action and did not appear therein, this contention was overruled and the Nevada divorce found to be valid.
In our case the choice of an attorney was not only not the independent, uncontrolled choice of the husband, there was not even an attorney named in the so-called power of attorney when he signed it. To hold that an attorney thus appointed is authorized to represent one in an action involving the dissolution of a marriage would be a travesty on justice and repugnant to our public policy. The plaintiff is entitled to a decree, declaring that the so-called Mexican divorce is invalid.
If the plaintiff and the defendant, or either of them, decides to introduce further proof in this action, the court could hear them at this Equity Term which will continue during the week of May 19, at anytime agreeable to both plaintiff’s and defendant’s counsel and convenient to the other engagements of the court. For the purpose of arranging such proof or stipulating that the ■proofs are closed, I direct both counsel to appear before me at Equity Term in the city of Rochester, New York, on May 21, 1958, at 10 o’clock in the morning.