Charles A. Loreto, J.
Plaintiff has brought this suit to set aside the separation agreement, to declare the divorce decree null and void and for a decree of separation with an allowance of alimony and counsel fee.
Upon the trial, it was proved that while plaintiff was a patient of the New York Psychiatric Institute, the defendant, her husband, secured her signature to a separation agreement and to a power of attorney for an uncontested divorce. With the *249 latter he obtained a Mexican decree of divorce, incorporating the terms of the separation agreement, which provides for the payment to her of the sum of $500 in two equal installments and the further sum of $150 per month for the period of three years.
The parties were married in New York in October, 1952. There are no children of the marriage. Defendant, a practising dentist, had been married and divorced on two prior occasions. Two boys in their latter teens, by one of defendant’s prior marriages, lived with the parties.
The court is satisfied from the record that shortly after their marriage the defendant became acutely aware of plaintiff’s emotional instability. Later acquiring knowledge of the insanity of her mother and brother, he had doubts as to her mental competency and became determined to terminate the marriage. He often brought the subject up to her. She dreaded and feared the severance of the marital bonds. By reason of his persistence she believed that there was no alternative but to yield and in February, 1956 she prepared and signed an agreement consenting to a divorce, the defendant agreeing to pay her a lump sum of $1,000 and $100 monthly for one year. Immediately after its execution the parties resumed cohabitation and that agreement was thereby terminated.
The plaintiff was keenly sensitive of her marital insecurity and her emotional instability became so bad that in the latter part of September, 1956 she was admitted to the New York Psychiatric Institute, from which she was released some time in October of that year, when she was required by the defendant to live apart in a hotel. Her condition worsened and in December, 1956 she took an overdose of sleeping pills and left a suicide note. She did the same in February, 1957.
On April 21,1957 police were called to their apartment following a fire in the bedroom and the plaintiff manacled was taken to the Bellevue Hospital psychiatric ward. This incident occurred following an altercation between the parties after which the plaintiff drank a water glass of rum, locked herself in the bedroom and in a state of hysteria caused the window curtain and bed covers to take fire. Upon becoming aware of the fire the defendant summoned the Police and Fire Departments.
On the following day defendant signed a petition to commit the plaintiff to Harlem Valley State Hospital, stating therein that she “ had attempted to kill herself by setting fire to her bed”. Upon the history and examination of the plaintiff, Dr. Hott certified as his diagnosis “ Schizophrenic Reaction Undifferentiated Type Suicidal ’ ’. Having had prior experience with mental institutions the plaintiff besought help and asked *250 for a transfer to the New York Psychiatric Institute, to which she was admitted on April 24,1957. During the first few weeks of her stay at that institution the defendant wrote several notes to her expressing his love and devotion, reassuring her that he would not abandon or desert her. Then on May 25, 1957, about one month after her admission thereto, he obtained permission to take her out of the institution in his custody for two hours. By automobile he brought her to the home of the secretary of his attorney where the separation agreement and the power of attorney were signed by the plaintiff and notarized by the secretary. These documents had been prepared by the defendant’s attorney at the defendant’s request and pursuant to his instructions.
At the trial plaintiff testified that the defendant gave her papers to look at while riding in the automobile, but that she could not read as she was crying and hysterical and that she does not know what took place at the apartment of the attorney’s secretary. The court finds that the plaintiff was in such a disturbed emotional and mental condition that she did not consciously give her free and willing consent to those instruments.
The court is satisfied that the defendant, realizing the plaintiff’s emotional and mental condition, wanted to be free of her and to secure such freedom with the most limited financial contribution possible. The plaintiff was painfully aware of his attitude toward her, and feeling forsaken was overcome with overpowering despair, reaching the point where she was ready to surrender life itself. There is no doubt that at times her conduct was irrational. It would indeed be uncharitable to deem her culpable for such conduct. She needed psychiatric care and treatment and above all the true and abiding devotion and loyalty of her husband. There is no doubt too that living with the plaintiff was very difficult if not impossible and that it would take a person of exceptional physical and moral fiber to do so. However difficult it was for the defendant to continue to live with her, the time and circumstances under which he secured her signature to the documents is shocking and must be denounced. The plaintiff was then suffering from acute hysteria, a psychoneurosis. When the defendant planned to secure and in fact obtained plaintiff’s signature to such important documents shortly after the dreadful episode of April 21, 1957 and while she was still a patient in a psychiatric hospital, was a time when she especially needed someone to protect her rights. She had no one. (See Molnar v. Molnar, 131 N. Y. S. 2d 120, affd. 284 App. Div. 948.) Can it be held that her letter *251 dated May 22, 1957 wherein she wrote 1 ‘ I have full confidence in you # * * I don’t know how you are going to handle this —but you have had practice * # * ” is confirmation that she knew what had been done? Or that her confidence in him in that connection was well reposed?
The several letters written by her soon thereafter indicate how depressed she was and how her mind was completely filled with the fear and dread of divorce and abandonment and how she still was fighting the thought of divorce.
Contrary to statute and the public policy of this State written in the statute (Domestic Relations Law, § 51), defendant took unconscionable advantage of his wife in securing her signature to these instruments which were designed to permit the dissolution of their marriage and to relieve him of his obligation to support her. At that time she was at his mercy. In a letter dated May 31, 1957 she wrote “It is all too miserable for me to accept — but I have no choice”. The court holds that the defendant is chargeable with having exercised a species of duress over his wife in connection with the execution of the documents. As both were signed at the same time and in the same circumstances, forming one transaction, they are both subject to the same infirmities.
Citing Wales v. Wales (160 Misc. 799, affd. 250 App. Div. 751) and Fry v. Fry (279 App. Div. 122), the defendant contends that the plaintiff’s suit is barred because whatever grounds might exist permitting attack of the separation agreement, since it is incorporated in the divorce decree of another forum, the latter having proper jurisdiction, the decree merges the separation agreement and the latter may not be collaterally attacked. However, these holdings and these principles do not apply to the facts at bar, since both the power of attorney and the separation agreement are voidable and are now declared void.
The fact that the plaintiff was never adjudicated incompetent and that no committee of her person and property was ever appointed, is of no consequence in this case. It is sufficient to declare the instruments executed by her voidable as the court finds that the plaintiff was not rational. (Finch v. Goldstein, 245 N. Y. 300, 302, 303; Smith v. Ryan, 191 N. Y. 452, 455.)
Also, in considering the support provisions in the separation agreement, it is clear that they are grossly inadequate and improvident and the product of his over-reaching. A husband cannot under such circumstances be relieved of his duty to support his wife. (Haas v. Haas, 298 N. Y. 69, 72; Jackson v. Jackson, 290 N. Y. 512.)
*252 “ Due to her sick and nervous condition she was incapable of forming a judgment as to the course of action which was in her best interest ” (Nusbaum v. Nusbaum, 280 App. Div. 315, 316-317; see, also, Pomerance v. Pomerance, 301 N. Y. 254, 256; Tirrell v. Tirrell, 232 N. Y. 224.) The court concludes that the separation agreement should be set aside and that the divorce decree should be declared null and void for all of the foregoing reasons.
With respect to the plaintiff’s action for separation, the court finds there is sufficient support therefor in the evidence of cruelty on the part of the defendant toward the plaintiff in his conduct in persistently beseeching her to give him a divorce and in seeking to be relieved of his obligation to support her except for limited small payments. This conduct on his part subjected her to great distress and mental anguish, which was aggravated when he refused to permit her to live in the same apartment on the occasions when she was discharged from the Psychiatric Institute in both 1956 and 1957. It is unnecessary to consider other evidence offered in support of this cause, as the court finds that this conduct on the part of the defendant is sufficient to warrant the granting of a decree of separation in her favor.
In determining the amount of alimony and counsel fee to be awarded the court finds that the defendant’s net earnings are approximately $15,000 yearly; that he possesses approximately $11,000 in cash and stocks. He has married again and has two sons, one 22 years of age and the second 17 years of age. The court is of the opinion that alimony in the sum of $60 per week should be awarded and in view of the arduous, capable and extended services rendered by plaintiff’s attorneys in this case as shown by the trial record, a counsel fee of $3,000 is awarded.
Submit findings of fact and conclusions of law in accordance with this opinion and decree, on notice.