Harold Tessler, J.
This is an action for a declaratory judgment alleging several causes of action as follows:
(1) To declare invalid a separation agreement and a power of attorney on the ground that they were procured by fraud and duress;
(2) To declare null and void a Mexican decree of divorce obtained by the defendant Herbert Bunin against the plaintiff;
(3) To declare the plaintiff the defendant’s lawful wife.
(4) Plaintiff seeks a judgment of separation on the grounds of abandonment, cruelty, nonsupport and adultery.
The parties were married in 1947. There are two children of the marriage, 12% and 8% years old.
On January 15, 1958, the plaintiff signed a separation agreement and a power of attorney authorizing an attorney in Mexico to appear on her behalf in a divorce action to be there commenced against her by the defendant. Plaintiff testified that commencing in November, 1957 the defendant kept asking her for a divorce, stating that he wanted to end their marriage; that she continually refused to consider these requests; that on December 9, 1957 defendant’s attorney, at the defendant’s sole request, called *174 at the house for the purpose of discussing a divorce, but on her learning of the purpose of his visit she became hysterical and the attorney left immediately. Both defendant and his attorney conceded this occurrence as plaintiff portrayed it and that no discussion took place. She further testified that from that date forward the defendant constantly and persistently — almost daily—pressured, harassed and badgered her about terminating their marriage and threatened to leave her and the children penniless if she refused to agree. She testified that she resisted all this until, on January 15, 1958, defendant brought home two documents, a separation agreement and a power of attorney, and demanded that she sign them; that upon her refusal he became abusive, threatened her and the children and finally slapped and struck her, after which she succumbed and signed both documents, being in fear of bodily harm; that she never read them, was told and knew nothing of their contents, never appeared before a notary public, and that she never had counsel representing her; that the defendant took the documents from her, packed his belongings, left the house that night and has never returned; that within the next two months she went to a rabbi and a marriage counsellor in an effort to save her marriage and bring the defendant back home; and that she attempted to get the defendant to go with her for this professional help, but he refused.
The plaintiff’s uncle and brother-in-law each testified that they had conversations with the defendant in which they asked him not to break up the parties’ márital home, but he stated that it had to be that way and that he was getting out.
The defendant denied that he coerced, harassed or struck his wife. He testified that commencing in August, 1957 the parties talked about a separation on numerous occasions and that in early December, 1957 he suggested a separation; that the plaintiff agreed to this and told him to get the papers drawn up; that he had the separation agreement and power of attorney prepared by his attorney (his present attorney) and presented them to her on January 15, 1958. The defendant’s testimony as to the plaintiff’s signing, and notarization of her signature - on the documents is conflicting and contradictory. At first he stated that plaintiff took them and returned them to him a day or two later, signed and notarized. However, on cross-examinatian he changed his testimony and stated that she called him on the telephone and came into Manhattan a couple of days later, met him and signed the papers before a notary public in the neighborhood of the defendant’s place of business. It is well to note at this point that the separation agreement was signed by *175 the defendant on January 15, 1958, in the office of his attorney, with the latter acting as notary, and that the Manhattan notary public was not produced as a witness at the trial, although available.
The defendant further testified that he left the parties’ marital home the night of January 15, 1958, and admitted that he refused to go to a marriage counsellor. He admits that he was served on April 4, 1958 with the summons and complaint in the first action brought by the plaintiff and that on April 11, 1958 he went to Mexico with knowledge of that action; that he stayed in Mexico one day and that he had no intention of establishing a residence in Mexico. He further testified that he knew the codefendant Bernice Tiger about eight years ago while she was employed in the same office; that he met her for the first time in about three years in May or June, 1958 and married her in July, 1958; that he “bumped into ” Miss Tiger while with some friends in May or June, 1958; that he “ asked her for a date ”; that he “ explained his situation ” to her; and that he “was living in hotel rooms”, “rolling around ” and “not wanting to live like that I thought I’d try marriage again” — which he did one or two months later.
The record concededly discloses that on April 4, 1958 the plaintiff commenced an action in this court to declare the separation agreement and power of attorney null and void and to enjoin the defendant from prosecuting an action for divorce in a foreign jurisdiction. The defendant admittedly was served personally with the summons and complaint in that action on April 4, 1958, and took it to his attorney, who appeared and interposed an answer on his behalf. This action was pending in this court until July 30, 1958, when it was discontinued by the plaintiff. The record further reveals that the defendant procured a Mexican decree of divorce dated June 10, 1958 after a one-day appearance there on April 11, 1958, both events occurring while the above action was pending; and that the defendant married the codefendant in July, 1958 during the pendency of that action and is presently living with her as man and wife in Valley Stream.
The instant action was commenced in December, 1959. The codefendant, Bernice Tiger, interposed an answer, but did not appear on the trial of the action.
This court heard and carefully observed the testimony given by the witnesses. The defendant’s testimony is not to be believed from almost beginning to end. The proof is clear and convincing that the signing of the separation agreement and power of attorney was not the voluntary act of the plaintiff, but rather *176 her involuntary act after her mental and physical resistance had been broken down by the defendant’s conduct in the form of constant harassment, coercion, threats and the actual infliction of bodily harm upon her.
The testimony in relation to the following is clear and convincing and is almost uncontroverted: (1) that the plaintiff was never consulted about the provisions in the separation agreement; (2) that she never actually negotiated in relation to them; (3) that she was never informed of defendant’s income and financial means; (4) that she never knew, nor was she ever informed, of the name of ‘ ‘ her ’ ’ Mexican attorney if and as it was set forth in the power of attorney when she signed it, and (5) that she was never represented by counsel in connection with either the negotiation, preparation or execution of the documents, whereas the defendant was represented by his present attorney from first to last. I am convinced that the plaintiff did not appear before the notary public named in the acknowledgment when she signed these documents.
The law is clear and well established that a separation agreement cannot be permitted to stand when its execution is procured by such duress and fraud as has been spelled out in this case. The agreement is in contravention of section 51 of the Domestic Relations Law and violative of the intent and purpose of that statute, and must be declared invalid. In view of the clear and convincing proof adduced, there is no need for prolonged discussion here. It shall suffice to refer to the following cases, the principles of which clearly support these conclusions. See Friedman v. Friedman (114 N. Y. S. 2d 874); Ducas v. Guggenheimer (90 Misc. 191, affd. 173 App. Div. 884); Oppenheimer v. Oppenheimer (20 Misc 2d 248, affd. 11 A D 2d 1006); Stewart v. Stewart (130 Misc. 59); Tirrell v. Tirrell (232 N. Y. 224); Haas v. Haas (298 N. Y. 69); Brock v. Brock (4 A D 2d 747.)
The conclusion is inescapable that the power of attorney is a nullity and the Mexican decree procured by the defendant based upon it is likewise invalid. Apart from the original premise that the power of attorney was obtained from the plaintiff by force and duress, it is clear that by her actions subsequent to her signing it, the plaintiff revoked it and disclaimed its use. The defendant had knowledge of this, having been served with the summons and complaint in the action to revoke it fully one week before his going to Mexico. The defendant’s use of the power of attorney under these circumstances constituted a deliberate and successful endeavor to perpetrate a fraud upon the Mexican court. He cannot be permitted to profit thereby in this court of equity. (See Molnar v. Molnar, 131 N. Y. S. *177 2d 120, affd. 284 App. Div. 948; MacPherson v. MacPherson, 1 Misc 2d 1049; Edgarton v. Edgarton, 54 N. Y. S. 2d 495; Kurman v. Kurman, 11 Misc 2d 1035.)
Amongst other reasons, defendant urges that the plaintiff may not succeed because, firstly, she has accepted and ratified the separation agreement by her several acts in the past of accepting and retaining certain of its benefits and, secondly, because she is guilty of loches in not bringing the instant action until almost two years after the execution of the agreement. These arguments are not at all persuasive. The plaintiff’s alleged acceptance or ratification consisted merely of being passive and having an awareness of the terms of the agreement and tacitly accepting its manifestly unfair and inadequate provisions for the support and maintenance of the plaintiff and the children. Her course of conduct and affirmative actions are indicative of everything contrary to a ratification. Within three months after their execution she commenced an action to disavow the agreement .and power of attorney. She testified that she discontinued this action because of her fear of the defendant’s threats and an abiding concern for her children and their welfare, also fearing that they would be harmed by publicity surrounding the suit, some of which publicity had already appeared in the public press with harmful effects.
I am convinced that the lapse of time before the commencement of the instant action was due to a continuation of plaintiff’s fearful and distressed state of mind resulting from her understandable fear of the defendant’s demonstrated abilities to ‘ ‘ push her around ’ ’ and his threats to leave her and the children without support. It is the court’s belief that the plaintiff endured the pinch and pain until she could do so no longer — and thereafter valor conquered discretion.
Assuming arguendo that the plaintiff did tarry and may in some measure be charged with loches, we are constrained to ask: Was the defendant injured? Did he in any way change his position to his damage or injury? The answers to both questions are positively in the negative. It is admitted that the defendant went to Mexico one week after being served, and married the codefendant within one month after obtaining the Mexican decree of divorce from the plaintiff; all of this while the latter’s first action to repudiate the separation agreement and power of attorney was' still pending in this court. According to his own testimony, defendant continues to live with this £ £ wife ’ ’ to this day. He relied not at all on any actions or lack of action by the plaintiff. The defendant was in no way harmed or caused to change his position by any lapse *178 of time or alleged loches that may be placed on the doorstep of the plaintiff. To deny the plaintiff justice on such ground’s would be contrary to the simplest and most basic concepts and principles of equity. The cases cited by the defendant are not referable to the one at bar and cannot be considered as controlling as to the issues involved herein.
Upon the record before me, I find the plaintiff is entitled to a judgment of separation against the defendant on the grounds of abandonment and cruel and inhuman treatment.
The record indicates that the defendant earned in 1957, 1958, 1959 and 1960 (through Sept. 30) the gross amounts of $28,927, $24,933.05, $36,455.23 and $29,744 respectively. In the same years his net earnings were $24,365.97, $22,273.58, $30,539.56 and $24,968. As against these net amounts defendant claims he expends approximately $10,000 per annum for traveling and other business expenses (he testified that he expended $10,468 in 1959). He presently pays to the plaintiff for the support of herself and the two children the annual sum of $4,980 ($75 weekly plus $90 per month for mortgage payments) under the separation agreement. He claims that he gratuitously has paid additional sums each year.
The amount being paid by the defendant is inconsistent with his legal obligations to the plaintiff and his children and is not commensurate with his earnings and financial means as disclosed in the record for the period from 1957 to date. The defendant is directed to'pay to the plaintiff the sum of $185 per week commencing November 1, 1960, for the support and maintenance of herself and the two children. Out of this amount the plaintiff shall pay the mortgage payments amounting to $1,080 per annum on the dwelling premises known as, 166-01 — 227th Street, Cambria Heights, and owned by the parties as tenants by the entirety. The plaintiff shall have exclusive possession of these premises and is to have custody of the two children, with visitation rights to the defendant. The parties are requested to agree as to such privileges. If they do not, the court will accept recommendations from each and will determine the visitation rights on the settlement of the judgment to be entered.
Upon the pleadings in this case and the record before me, I find the plaintiff is entitled to judgment declaring:
(1) that the separation agreement and power of attorney executed on January 15, 1958 are null and void;
(2) that the Mexican decree of divorce obtained by the defendant Herbert Bunin against the plaintiff, dated June 10, 1958, is null and void;
*179 (3) that the plaintiff is the lawful wife of the defendant Herbert Bunin; and
(4) that the plaintiff is entitled to a judgment of separation against the defendant.
The foregoing constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.