Charles A. Loreto, J.
Action by the former wife of the defendant to recover alleged payments due to her under a separation agreement.
In his answer, defendant counterclaims for certain advances allegedly in the form of loans made for the benefit of the daughter, and asserts as a defense the illegality of the agreement as violative of public policy.
The parties were married in the State of New Jersey, in July, 1937. Their only issue, a daughter, was born in 1940. The parties separated in 1944, and after a series of events, including legal and judicial proceedings, entered into a written agreement, the subject of this action.
This instrument sets forth many provisions and stipulations usually incorporated in a separation agreement. It contains, among other provisions, the agreement on the part of the defendant to pay to his wife the sum of $100 per week as alimony and support for their infant child. The subject of divorce is also mentioned in the agreement. It provides that in the event she obtains in a court of competent jurisdiction a decree of divorce absolute which would incorporate the alimony *1096 payments afore-mentioned, she would then have the option, in lieu of such payments, of demanding the payment of $67,310, as follows: (1) $10,000 upon delivery of the decree; (2) $57,310 in weekly instalments of $110 each, tax free, over a period of 10 years and 1 week. A time limit on the exercise of the option, of 1 year after the decree, was placed, and the payments were to continue even if the wife- remarried. Payments were to cease in the event of the husband’s death. In the event of the wife’s death, reduced payments were to be made into a trust fund to be created for the daughter.
Immediately after the execution of the agreement, plaintiff obtained a divorce in another jurisdiction and, pursuant to the contract, notified the defendant of her election to exercise the option. Defendant, thereupon, turned over to plaintiff the sum of $10,000, -and, until June 15, 1957, kept up payments on the balance. Upon his failure to continue, the wife has commenced this action.
It is axiomatic that a separation agreement whose direct tendency is to promote divorce or to facilitate its procurement is void as against public policy. (Domestic Relations Law, § 51; 2 Restatement, Contracts, § 586.) The law favors the preservation of the marriage relationship, and such an agreement, aside from imperilling the marital -status, interferes with the proper administration of justice -and constitutes a fraud on the courts. (Schley v. Andrews, 225 N. Y. 110.)
Where the benefit to be secured by the wife under the agreement is contingent upon the dissolution of the marriage, it is invalid (cf. Lake v. Lake, 136 App. Div. 47). This also holds where “ the value of the contractual benefit to tire wife is substantially in excess of what the court would ordinarily grant under the circumstances of the case pursuant to the applicable statute of divorce ”. (Van Voobhis, J., in Yates v. Yates, 183 Misc. 934, 940.)
The plaintiff, as a condition of her divorce, received $10,000 and a promise of payments secured by collateral over a period of 10 years, whether or not she remarried. However, without proof of defendant’s financial worth at the time of the agreement, it cannot be said that the contractual benefit to the plaintiff exceeded -anything she might have obtained in court. Viewed, as it must be-, in light of conditions at the time of the signing of the agreement, there is nothing intrinsic in the agreement to justify a holding -that it was inducive to a divorce.
Defendant attacked the validity of the agreement on the basis of conversations had with his wife prior to its execution. He *1097 offered such testimony in order to indicate that its true purpose was to arrange for her to secure a divorce in order to obtain larger sums of money from Mm as a consideration therefor. Objection t'o tMs proof was interposed on the ground that it violates the parole evidence rule. It was received, however, subject to a motion to strike, the court reserving its ruling thereon until ‘after it had an opportunity to examine relevant authorities.
The court concludes that this testimony was admissible. The motion to strike it is denied.
‘ ‘ Agreements prior to or contemporaneous with an integration are admissible in evidence # * * (b) to prove facts rendering the agreement void or voidable for illegality” (1 Restatement, Contracts, § 238). Where the burden of the cause of action is the cancellation of a separation agreement wMch appears to be valid on its face, the production of evidence dehors the instrument establishing its invalidity is permissible. (Galusha v. Galusha, 138 N. Y. 272, 280.) Were tMs not the rule, parties would have the power to make illegal agreements enforcible simply by reducing them to writing, using such terminology as would conceal their illegal objectives. As was 'stated in a similar matter in another jurisdiction: “ ‘ Where a written instrument is attacked upon the ground that the contract is offensive to law 'and violative of public policy, the whole transaction should be inquired into. ’ ” (Miller v. Miller, 284 Pa. 414, quoting from Kuhn v. Buhl, 251 Pa. 348, 373.)
Defendant’s testimony uncontradioted, which the court credits, establishes clearly the motive beMnd the execution of the instrument. He testified that in a conversation in the Spring of 1951 with the plaintiff, concerning their financial arrangements, he told her he would not agree to make any changes unless she gave him “ peace of mind ” in return. “ She finally said that, ‘ If it is peace of mind you want, will you pay for a divorce, ’ and I said, ‘ Well, it could be, but what amount are you talking about? ’ She mentioned some exorbitant figure, around $100,000, I believe it was, and I told her it was out of the question. Our conversation, nevertheless, continued and, after some time, we finally settled on a $10,000 payment and $110 a week, tax free. After we had agreed, I went to my attorney and, I believe, she went to hers, 'and they took care of the legal phase of it.” The agreement in issue is apparently the result of this arrangement. The fact that it was signed on July 12, 1951, and a Virgin Islands decree dissolving the marriage was issued on August 30 of the same year, lends credence to defendant’s description of the transaction.
*1098 In view of the foregoing, the court concludes that the agreement between the parties was executed with an intention contrary to the public policy of this State and is, therefore, unenforcible. Plaintiff’s action is, therefore, dismissed without prejudice to any rights she may have under the foreign decree.
Defendant’s counterclaims are likewise dismissed. His testimony that the payments were made as a loan is disbelieved. It is the court’s finding that they represent ’outlays made by a parent of means over and above his limited legal or contractual obligation.
This constitutes the decision of the court pursuant to section 440 of the Civil Practice Act.