Arthur Cr. Kleih, J.
The plaintiff, the former wife of the defendant, sues to recover arrears in payments claimed to be due her under the terms of a separation agreement entered into by these parties on October 15, 1951.
The defenses are that the plaintiff has abandoned and repudiated the said agreement by obtaining different support provisions from those contained in said agreement, in a Virgin Islands divorce decree obtained by her, and also that the separation agreement is null and void by reason of section 51 of the Domestic Eelations Law in that it was allegedly a condition of that agreement that the defendant was to obtain a divorce *732 from the plaintiff. There is a third defense which alleges partial payment of the amount claimed to be due.
In April, 1951 the parties, then husband and wife, had become estranged, and defendant had become interested in the lady who is now his wife. When the defendant admitted the estrangement, plaintiff engaged the late Arthur Garfield Hayes as her attorney with a view to continuing the marriage. Negotiations ensued during which the plaintiff told the defendant that she was content to continue living as she was, although she had previously stated she was going to get a divorce. The defendant also consulted counsel, one Leo Bradspies, Esq., and informed Mr. Bradspies of his desire to terminate his marriage and to marry his present wife. On or about July 2,1951, defendant and plaintiff separated and defendant agreed to pay plaintiff the sum of $400 a month until October 1, and the parties agreed that they would discuss the matter further on that date.
When negotiations were resumed, defendant was informed that, in order to induce his wife to obtain a divorce, he would have to agree to increase the alimony payments and would have to take steps acceptable to her whereby he would charge a trust deed of which he was a beneficiary with his obligation to meet these increased alimony payments, a term not attached to the lesser payments to which the defendant had agreed before his wife consented to obtain a divorce.
Section 51 of the Domestic Relations Law provides so far as is relevant here that “ a husband and wife cannot contract to alter or dissolve the marriage or to relieve the husband from his liability to support his wife ”.
In Matter of Rhinelander (290 N. Y. 31, 37) the Court of Appeals stated: “ In pursuance of our settled policy to favor the continuance of the marriage relation, we have, however, consistently refused enforcement to a separation or support agreement shown to be a part of a scheme to obtain or facilitate a divorce, as when the husband promises to pay alimony as a reward to his wife for getting a divorce, or when the money provisions for her support are a premium or reward, inducement or advantage to the wife for procuring a divorce ”.
See, also, Murthey v. Murthey (287 N. Y. 740 [1942]), the leading New York case invalidating a separation agreement because of an oral agreement to obtain a divorce.
Mr. Bradspies testified that he and Mr. Hayes commenced their negotiations in the early Summer of 1951, with a common view that it-would be futile to try to reconcile Mr. and Mrs. Viles. It was first agreed that the defendant would pay the plaintiff $400 a month for three months. Thereafter, on or *733 about September 19, just prior to the expiration of the three-month period there was a further agreement, party oral and partly incorporated in the separation agreement. This witness testified that they agreed that there would be a divorce following the execution of the separation agreement, which was executed and delivered to Mr. Hayes on October 15, 1951.
The witness Bradspies testified that he personally delivered to the plaintiff’s attorney on October 15, 1951 the executed separation agreement, together Avith defendant’s check in the sum of $2,100. This represented a counsel fee of $1,500 and $600 to cover the plaintiff’s expenses in the Virgin Islands, where she had agreed to go to get a divorce. I credit his testimony; and the conclusion is inescapable that the separation agreement was entered into as a part of a plan to obtain or facilitate the divorce.
The plaintiff’s present attorney, Mr. Messing, admitted that the check for $2,100 dated October 12, 1951, and made payable by Mr. Viles to the order of Mr. Hayes’ law firm was deposited in the law firm’s special account because the check included the amount intended to defray Mrs. Viles’s expenses of travel and residence in the Virgin Islands for the purpose of obtaining a divorce.
The most recent case concerning a collateral oral agreement invalidating a separation agreement valid on its face is Niman v. Niman (15 Misc 2d 1095, affd. 8 A D 2d 793 [1st Dept., 1959]) where this court dismissed a wife’s action for arrears on a separation agreement. The facts in Niman are similar to those involved in the instant action. A husband and wife entered into a separation agreement on July 12, 1951, which agreement the court found to be valid on its face. The plaintiff wife obtained a Virgin Islands divorce approximately six weeks after the signing of the agreement. The defendant husband attacked the validity of the agreement on the basis of conversations had with his wife prior to its execution, indicating that the true purpose of the agreement Avas for her to arrange to secure a divorce. After concluding that this testimony Avas admissible, the court stated (pp. 1097-1098):
“ Defendant’s testimony uncontradicted, which the court credits, establishes clearly the motive behind the execution of the instrument. He testified that in a conversation in the Spring of 1951 with the plaintiff, concerning their financial arrangements, he told her he would not agree to make any changes unless she gave him ‘ peace of mind ’ in return. ‘ She finally said that, “ If it is peace of mind you want, will you pay for a divorce,” arid I said, “ Well, it could be, but what amount are you talking *734 about? ” She mentioned some exorbitant figure, around $100,000,1 believe it was, and I told her it was out of the question. Our conversation, nevertheless, continued and after some time, we finally settled on a $10,000 payment and $110 a week, tax free. After we had agreed, I went to my attorney and, I believe, she went to hers, and they took care of the legal phase of it.’ The agreement in issue is apparently the result of this arrangement. The fact that it was signed on July 12,1951, and a Virgin Islands decree dissolving the marriage was issued on August 30 of the same year, lends credence to defendant’s description of the transaction.
‘ ‘ In view of the foregoing, the court concludes that the agreement between the parties was executed with an intention contrary to the public policy of this State and is, therefore, unenforcible. Plaintiff’s action is, therefore, dismissed without prejudice to any rights she may have under the foreign decree.” (Emphasis added.)
Here as in Niman, the facts ‘1 lend credence to defendant’s description of the transaction ”.
In view of this holding that the separation agreement is contrary to public policy and is violative of section 51 of the Domestic Relations Law, the questions raised by the other defenses need not be reached.
Judgment is accordingly awarded in favor of the defendant dismissing the complaint on the merits on the law and the facts.